### In re HILLSBOROUGH HOLDINGS CORPORATION, et al., Debtors.

**Bankruptcy Nos. 89–9715–8P1 to 89–9746–8P1 and 90–11997–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 27, 1993.

See also 146 B.R. 1012, 146 B.R. 1015, 150 B.R. 817.

Don M. Stichter, Stichter, Riedel, Blain and Prosser, Tampa, FL, Michael J. Crames, Kaye, Scholer, Fierman, Hays & Handler, New York City, for debtors.

Paul Burke O'Hearn, Jones, Day, Reavis & Pogue, Atlanta, GA, Marc S. Kirschner, Jones Day Reavis & Pogue, New York City, Zala Forizs, St. Petersburg, FL for Official Unsecured Creditors Committee.

Daniel Golden, Stroock & Stroock & Lavan, New York City, John Genovese, Stroock & Stroock & Lavan, Miami, FL, for Official Committee of Bondholders Committee.

Leonard Gilbert, Carlton, Fields, Ward, Emmanuel Smith & Cutler, P.A., Tampa, FL.

Harold S. Novikoff, Wachtell, Lipton, Rosen & Katz, New York City.

Ellen Werther, Coudert Brothers, New York City.

James Spiotto, Ann Acker, Angela Drummond Dodd, Chapman & Cutler, Chicago, IL.

Robert B. Glenn, Glenn, Rasmussen, Fogarty, Merryday & Russo, Tampa, FL.

Hillsborough Holdings Corp., John F. Turbiville, Tampa, FL.

Blasingame Forizs & Smiljanich, Teresa J. Rooney, St. Petersburg, FL.

Robert Coley, Atlanta, GA, U.S. Trustee.

Chapman & Cutler, J. Spiotto, A. Dodd, Chicago, IL.

Sidley & Austin, Shalom L. Kohn, Chicago, IL.

Sallis Advisers, Inc., Bobbie Downey and John W. Burgess, Beverly Hills, CA.

Alston & Bird, John C. Weitnauer, Atlanta, GA.

Rudnick & Wolfe, Mark J. Wolfson, Tampa, FL.

SECC, E. Gordon Robinson, Jr., Atlanta, GA.

Philip Brothers, Bernard Bernstein, New York City.

GE Pension Trust, Ron Herman, Stamford, CT.

Columbia Sav. & Loan, Keenan L. Wolens, Beverly Hills, CA.

Centrust Bank, W. Christopher Berry, Miami, FL.

The Bank of New York, David Sampson, New York City.

Barnett Bank Trust Co., N.A., Christine DiPatre, Jacksonville, FL.

Mellon Bank, Joseph C. Progar, Pittsburgh, PA.

Reed Smith Shaw & McClay, Kathleen Yurchak, Pittsburgh, PA.

Winthrop, Stimson, Putman & Roberts, Ted Berkowitz, New York City.

IBJ Schroeder Bank & Trust Co., Emma Colageo, New York City.

Olshan, Grundman & Frome, Morris Orens, New York City.

Mahoney, Adams & Criser, Karen S. Jenneman, Jacksonville, FL.

Kaye, Scholer, Fierman, Hays & Handler, Andrew A. Kress, New York City.

Bear, Stearns & Company, Inc., Marc A. Gineris, New York City.

Coneco Capital Management, Gregory J. Hahn, Carmel, IN.

Fowler, White, Gillen, Boggs, Villareal & Banker, Edward M. Waller, Tampa, FL.

Ernst & Young, Michael F. Grieg, New York City.

Internal Revenue Service, Special Procedures, Mahoney, Adams & Criser, Karen S. Jenneman, Jacksonville, FL.

U.S. Trustee's Office, Robert Coley, Atlanta, GA.

Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Leonard H. Gilbert, Tampa, FL.

Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, John K. Olson, Tampa, FL.

## ORDER ON DEBTOR'S MOTION FOR ORDER APPROVING A COMPROMISE AND SETTLEMENT AGREEMENT WITH VARIOUS BANKS

ALEXANDER L. PASKAY, Chief Judge.

THESE ARE yet-to-be-confirmed Chapter 11 cases instituted by Hillsborough Holdings Corporation, et al. (Debtors), now known as Walter Industries, Inc. (WII), and its 31 wholly-owned subsidiaries. The matter under consideration is a Motion in which the Debtors seek an Order Approving a Compromise and Settlement Agreement. In their Motion, the Debtors requests an order approving the Compromise and Settlement Agreement between the Debtors and several banking institutions (Banks) which are parties to the Credit Agreement dated September 10, 1987, as amended (Revolving Credit Agreement), and/or the Working Capital Credit Agreement, dated December 29, 1987, as amended (Working Capital Credit Agreement). The Motion was set for hearing in due course with appropriate notice to all parties. Having considered the Motion and several Objections, together with the relevant part of the record, the Court now finds the following facts and concludes as follows:

On December 27, 1989, the Debtors and thirty-one of its affiliates each filed their Petition for Reorganization under Chapter 11 of the Bankruptcy Code. On December 3, 1990, JW Resources, Inc., also an affiliate of WII, filed its Petition for reorganization under Chapter 11 of the Bankruptcy Code. Since the filing date, the Debtors remained Debtors-in-Possession (DIP), and have continued to manage their respective businesses and their properties pursuant to §§ 1107 and 1108 of the Bankruptcy Code and pursuant to the customary DIP order entered by this Court. No trustee or ex-

aminer has been appointed in any of the Debtors' Chapter 11 cases.

As of the filing date, the Debtors and twenty-two Banks were parties to the Revolving Credit Agreement and the Working Capital Credit Agreement (Credit Agreements). Under the Credit Agreements, the Debtors were obligated to the Banks in the aggregate approximate principal amount of $321.792 million ($79.5 million under the Working Capital Credit Agreement and $242.292 million under the Revolving Credit Agreement). Since the filing date, by virtue of letters of credit, the principal amount has been increased by $2.9 million to approximately $324.692 million ($82.4 million under the Working Capital Credit Agreement and $242.292 under the Revolving Credit Agreement).

The obligations of the Debtors to the Banks are secured by security interests in the following: (a) all of the stock of most of the Debtor subsidiaries of WII; (b) the stock of two non-Debtor subsidiaries of WII; (c) the stock of Beijer Industries AB; (d) pledges of certain inter-company notes between WII and most of the other Debtor and non-Debtor subsidiaries; (e) the corporate headquarters of WII and related land in Tampa, Florida; (f) pledges of certain notes payable to the Debtors; and, (g) funds held in accounts with two of the banks subject to rights of setoff which were applied against the obligations pursuant to a previous order of this Court.

In addition to the $324.692 million owed to the Banks, some of the Debtors are also indebted to the holders of Series B Senior Extendible Reset Notes in the aggregate principal amount of $176.3 million and to the holders of Series C Senior Extendible Reset Notes in the aggregate principal amount of $5 million. Some, but not all, of the collateral also secures the Debtors' obligations to the holders of the Senior Notes.

The proposed Compromise and Settlement Agreement provides for the following: (a) the amounts of principal, pre-petition accrued interest and pre-petition fees due under the respective Credit Agree-

ments as of the filing date, as such principal amount may be increased by letter of credit draws and reduced by the application of the Contingent Principal Reductions (the Adjusted Claims); (b) the interest (Stub Period Interest) to be added to the Adjusted Claims, computed exclusively at the Prime Rate of the Banks in effect from the filing date through October 31, 1992, (the Stub Period) plus 1½% per annum (Interest Rate); (c) the interest will accrue at the Interest Rate (Accrued Interest) on the sum of the Adjusted Claims and the Stub Period Interest on November 1, 1992 (the Commencement Date); (d) the Accrued Interest will be payable by the Debtors to the Banks on the last day of each calendar quarter following the Commencement Date; (e) upon the receipt of each Accrued Interest payment, the Banks will waive their claim for Default Rate Interest for that quarter and 1/16th of their claims for Compound Interest and Default Rate Interest for the Stub Period, and that the entirety of such claims for the Stub Period will be waived if the Debtors make payments for 16 consecutive quarters or, if shorter, through the date of consummation of the Debtors' plans of reorganization; (f) the payment of post-petition Bank expenses, subject to the approval by this Court and the standards established by this Court in the Debtors' Chapter 11 cases; and (g) a reservation of the Banks' Claims for adequate protection.

The proposed compromise further provides that, if approved by the Court, it will be binding not only upon the Banks, but also on their assignees and any institutions which might have purchased, or may purchase, some or all participation interests in loans outstanding under the respective Credit Agreements from any of the Banks. It is important to note that the Credit Agreements will be terminated upon the occurrence of any of the following termination events: (a) the Debtors fail to make Accrued Interest payments to the Banks when due or within 60 days thereafter; (b) the Debtors terminate the Compromise

and Settlement Agreement or cease to propose plans of reorganization under which the Banks' claims would be paid in full, in cash, upon consummation of such plans; or (c) the Bankruptcy Court takes action which results in the Debtors being financially or legally unable to pay the Banks' claims in full, in cash, upon consummation of such plans.

In addition, the proposed compromise also provides that the Banks may terminate the Agreement prior to the date on which the first payment of Accrued Interest is required to be made, at the discretion of the Banks holding more than 66⅔% of the aggregate dollar amount of Bank claims, while the stay of the Order approving the Agreement is in effect. Also, the Debtors may discontinue payments of Accrued Interest at any time.

However, the Banks would waive all of their Stub Period disputed claims and any claim for application of the contingent principal reductions in interest, if, prior to the occurrence of a Termination Event, the requisite majority of Banks take one of the following actions: (1) oppose the Debtors' right to an extension of exclusivity; (2) fail to accept affirmatively, the Debtors' plan of reorganization; (3) fail to indicate to this Court their intent to accept affirmatively the plan; or, (4) fail to rebut an indication of acceptance with respect to an alternative plan of reorganization which does not resolve the disputed asbestos claim issues in the Debtors' Chapter 11 cases in a manner satisfactory to the Debtors and the Official Committees.

In addition, if, prior to the occurrence of a Termination Event, a Bank or a group of Banks constituting less than the requisite majority of banks takes the actions described above with respect to opposition to an extension of exclusivity or support of a plan or reorganization other than the Debtor's plan, such bank or banks would waive all of their Stub Period disputed claims, any claim for application of the contingent principal reductions to interest, default rate interest and compound interest for all future periods and would cease receiving its share of Accrued Interest under the Compromise and Settlement Agreement. Such bank or banks would, however, retain their claims in respect of such Accrued Interest.

The Debtors contend that approval of the proposed Compromise and Settlement Agreement is in the best interest of the Banks, the Debtors' estate and the Debtors' other creditors because it would resolve all disputed matters with the Banks, leaving the Debtors free to devote their time to finalizing viable plans of reorganization. However, there is very strong opposition to the Motion. The Official Committee of Bondholders (Committee) and AIFII, L.P., Altus Finance (Altus) and Fidelity Management & Research Company, (Fidelity), creditors, have each filed an Objection to the Motion.

The Committee argues the following in opposition to the Motion: (1) no basis exists in the Bankruptcy Code and Rules to authorize current payment of post-petition interest to the Banks; (2) in the event that this Court approves the payment of post-petition interest to the Banks, any award of current post-petition interest is premature in light of the pending asbestos-related litigation; (3) the Compromise and Settlement Agreement does not meet the standard of review required by the Eleventh Circuit for approval of a proposed settlement as set forth in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir.1990), cert. denied, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990), which includes the probability of success of litigation, the difficulties, if any, to be encountered in the matter of collection, the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and the paramount interest of the creditors and a proper deference to their reasonable views in the premises; and finally (4) the real motivation for seeking approval of the Compromise and Settlement Agreement is the Debtors' desire to maintain control over the asbestos litigation and the plan process

with no real interference from the Banks. In effect, the Committee considers the Agreement to be a bribe to silence the Banks from acting negatively in the plan process and from interfering with the conduct of the asbestos litigation.

AIFII, L.P., Altus and Fidelity, acting on behalf of various bonds issued by the Debtors, also take the position that the interest of bondholders may be substantially prejudiced if the Motion is granted. Specifically, they object to the Agreement on the following grounds: (1) it purports to dictate the future terms of a plan of reorganization for the Debtors in contravention of applicable case law and provisions of the Bankruptcy Code; (2) it fails to meet the judicial standards for approval of a compromise and settlement pursuant to Bankruptcy Rule 9019; (3) it indefinitely perpetuates the already unlevel playing field by giving the Debtors' equity holder improper leverage in the reorganization process; and (4) it will substantially delay the Chapter 11 case because, if approved, the Banks will be receiving current interest payments and will be unwilling to participate in the reorganization process.

Upon review of these Objections, this Court is satisfied that it would not be appropriate to approve the Compromise and Settlement Agreement for several reasons. First, it is apparent that no controversy exists with regard to the Banks and, therefore, a Compromise and Settlement Agreement is premature. Second, it is well established that a Court should not allow a Debtor to circumvent the requirements of Chapter 11 by authorizing action by the Debtor which would serve to dictate the terms of a future plan of reorganization. *See In re Braniff Airways, Inc.,* 700 F.2d 935, 940 (5th Cir.), reh'g denied, 705 F.2d 450 (5th Cir.1983). This Court is satisfied that approval of the present Motion would do just that. Approval of the Agreement would only predetermine the rights of the Banks and the treatment of the Banks' claims prior to the Confirmation hearing. This is clearly not a practice endorsed by the Bankruptcy Code, the Bankruptcy Rules or this Court. Third, this Court agrees with the Committee and finds that approval of the Agreement would only make the negotiation process uneven, excluding the Banks from the negotiation process and leaving the other creditors to fend for themselves. Inasmuch as the Banks are usually the most influential creditors in a Chapter 11, this Court is satisfied that if they were removed from the playing field, the negotiation process would only be further delayed because the Debtor would have less incentive to put a viable plan forward. On the other hand, if the Banks did not receive current interest payments, they would be more likely to push the plan process forward to a faster conclusion. Clearly that would be an end result which is beneficial to all of the Debtors' creditors, not just the Banks. Fourth, this Court will not permit the development of a plan of reorganization in a piecemeal fashion without complying with the required disclosure and solicitation provisions of the Bankruptcy Code, inasmuch as piecemeal development of a plan would put creditors at a disadvantage in plan negotiations. For these reasons, this Court is satisfied that approval of this Compromise would be a substantial detriment to the Debtors' estate and therefore, is inappropriate.

One last comment. This Court is satisfied that the Committee's reliance on *In re Justice Oaks II, Ltd., supra,* is misplaced in the present situation because it is inapplicable. This is so because there is no pending litigation, no continuing collection efforts, and no controversy between the parties. Rather, it is an attempt to preordain the treatment of creditors without the benefit of the confirmation process and to bind the other parties to it, something this Court will not allow.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Order Approving A Compromise And Settlement Agreement with Various Banks be, and is hereby, denied and the Compromise is hereby disapproved.

DONE AND ORDERED.